IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| BH HASID, LLC,<br><br>    Plaintiff,<br><br>                v.<br><br>IA DARON VILLAGE, LLC; IA ONE MANAGER, LLC; IA ONE INVESTORS, LLC; and JOHN DOES 1-10,<br><br>    Defendants. | Civil Action No.<br>1:19-cv-03509-SDG |

**ORDER**

This matter is before the Court on Defendants IA Daron Village, LLC; IA One Manager, LLC; and IA One Investors, LLC's ("Defendants" or "IA Entities") motion to dismiss Plaintiff BH Hasid, LLC's ("BHH") Complaint [ECF 3]. For the following reasons, Defendants' motion is **GRANTED.**

**I.    BACKGROUND**

The following facts are treated as true for purposes of this motion.[1] BHH is a limited liability company incorporated and headquartered in Georgia.[2] BHH and

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 1-1, ¶ 2.

Aryeh Kiefer entered into a contract to own, develop, and manage investment properties in the Atlanta area.[3] Under the agreement, BHH and Kieffer created five separate corporate entities.[4] Each of these entities were wholly-owned subsidiaries of BHH, but were operated by Kieffer and his two wholly-owned entities—Addison Capital and Addison Advisors (the "Addison Entities").[5] One of the entities created by BHH and Kieffer was Addison Hasid VI.[6]

On December 23, 2015, Addison Hasid VI executed an agreement to purchase the Sierra Ridge apartment complex for $3.135 million, subject to closing within 30 days.[7] On or about January 8, 2016, rather than moving funds directly to Addison Hasid VI to make the purchase, BHH transferred $3,178,635 to Addison Advisors so that it could purchase the Sierra Ridge complex on behalf of Addison Hasid VI.[8] On or about January 10, 2016, instead of using the funds to purchase the Sierra Ridge complex, Addison Advisors wired $1.7 million to an escrow

---

[3]   *Id.* ¶ 14.

[4]   *Id.* ¶ 19.

[5]   *Id.* ¶¶ 19–20.

[6]   *Id.* ¶ 21.

[7]   *Id.* ¶ 24.

[8]   *Id.* ¶ 25–26.

account controlled by the law firm Pursley Friese Togrimson, LLP.[9] The law firm, in turn, used that $1.7 million to purchase the Daron Village apartment complex on behalf of Addison Capital.[10] This purchase was executed without BHH's authorization or knowledge.[11]

In light of Addison Capital's $1.7 million purchase of the Daron Village complex, there were insufficient funds to close on purchase of the Sierra Ridge complex as originally agreed.[12] As a result, Kieffer and the Addison Entities executed three extensions of Sierra Ridge's closing date—each of which increased the purchase price.[13] During this time period, Kieffer created three new entities—Defendants IA Daron Village, IA Investors One, and IA One Manager—for the purpose of purchasing, investing in, and managing the Daron Village complex.[14] The Defendant IA Entities are limited liability companies incorporated and headquartered in Florida.[15]

---

[9]   *Id.* ¶ 31.

[10]  *Id.* ¶¶ 27–29.

[11]  *Id.*

[12]  *Id.* ¶¶ 35–39.

[13]  *Id.* ¶¶ 35–39.

[14]  *Id.* ¶¶ 41–45.

[15]  *Id.* ¶¶ 3–6.

On April 20, 2016, Addison Capital sold the Daron Village complex to Defendant IA Daron Village for $2 million—$300,000 over the purchase price that Addison Capital spent to purchase Daron Village just three months earlier.[16] BHH does not allege IA Daron Village used any money traceable from BHH to purchase the Daron Village complex. On April 22, 2016, Addison Hasid VI completed the purchase of the Sierra Ridge complex for $3.45 million, approximately $300,000 over the original purchase price.[17] Addison Hasid VI continues to own the Sierra Ridge complex.[18]

On June 10, 2019, BHH initiated this action in the State Court of Fulton County.[19] BHH asserts four causes of action: (1) equitable accounting, (2) unjust enrichment and money had and received, (3) constructive trust, and (4) attorney's fees.[20] The only named Defendants are the IA Entities. BHH alleges that Kieffer, through the Addison Entities, embezzled approximately $1.7 million of BHH's funds to clandestinely purchase the Daron Village complex without BHH's consent, which Kieffer and his entities then sold to IA Daron Village. IA Daron

---

[16]   *Id*. ¶ 40.

[17]   *Id*. ¶¶ 21, 52.

[18]   *Id*.

[19]   *Id*.

[20]   *Id*.

Village is wholly owned by Kieffer and IA Daron Village continues to own the Daron Village complex.[21] As a result of these events, BHH contends that it had to expend excessive, unnecessary funds to purchase the Sierra Ridge complex.[22]

On August 2, 2019, Defendants timely removed the case to this Court based on diversity jurisdiction.[23] On August 9, 2019, they moved to dismiss BHH's Complaint.[24] On August 30, 2019, BHH opposed the motion.[25] On September 13, 2019, Defendants filed a reply.[26]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[21]  *See generally id.*

[22]  *Id.*

[23]  ECF 1.

[24]  ECF 3.

[25]  ECF 6.

[26]  ECF 8.

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th 2010) (*quoting Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (*quoting Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### III.   DISCUSSION

"In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006). *See also Klaxon Co. v. Stento Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Georgia follows the doctrine of *lex loci delicti* in tort cases, pursuant to which "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (2005). "The place where the tort was committed, or, the *locus delicti*, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750–51 (2013) (*citing Risdon Enter., Inc. v. Colemill Enter., Inc.*, 172 Ga. App. 902, 903 (1984)). Here, Georgia is the state where the injury sustained was suffered because BHH is a Georgia limited liability company and was allegedly deprived of property and money in its possession in Georgia.[27] Thus, the Court must apply Georgia state law to the substantive issues underlying BHH's claims.

---

27   ECF 1, ¶ 2.

### A. BHH's Claim for Unjust Enrichment and Money Had and Received (Count II) Must Be Dismissed.

Count II of the Complaint asserts a claim for both unjust enrichment and money had and received.[28] For purposes of this Order, the Court will address each claim separately.

### *i.* Unjust Enrichment

A claim for unjust enrichment "applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Smith Serv. Oil Co. v. Parker*, 250 Ga. App. 270, 271 (2001). *See also Jones v. White*, 311 Ga. App. 822, 827–28 (2011) ("The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received."). Under Georgia law, "the essential elements of the claim are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012). Georgia law requires that a "plaintiff confer a benefit upon the defendant." *Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-00222-HLM,

---

[28] ECF 1-1, ¶¶ 67–72.

2016 WL 9449794, at *9 (N.D. Ga. Sept. 12, 2016). *See also Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849, 856 (11th Cir. 2013) (applying Georgia law and holding that "a transfer of some benefit from plaintiff to defendant is an element of an unjust enrichment claim"); *Ridgeline Cap. Partners, LLC v. MidCap Fin. Servs., LLC*, 340 F. Supp. 3d 1364, 1372 (N.D. Ga. 2018) (*quoting Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290, 1298 (N.D. Ga. 2015) ("To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that *it* conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit.") (emphasis in original)).

It is undisputed that BHH and Defendants have never directly exchanged money or executed a contract. BHH instead alleges it conferred a benefit upon Defendants through its dealings with Kieffer and the Addison Entities when "(1) Addison Capital embezzled funds to purchase Daron Village, (2) the IA Entities acquired interests in Daron Village for less cash investment than would have otherwise been necessary, and (3) Kieffer, indirectly through his entities, acquired an interest in Daron Village without investing personal capital."[29] Put another way, BHH seeks compensation for the alleged benefit IA Daron Village

---

[29] *Id.* ¶ 68.

obtained when it purchased the Daron Village complex for $2 million from Addison Capital, which obtained the complex in the first instance from a third-party with (allegedly) BHH's money.[30]

Assuming the truth of BHH's allegations, this sequence fails to state a claim for unjust enrichment as a matter of law. The first and third benefits alleged by BHH were conferred upon Addison Capital and Kieffer, two non-parties. This is insufficient to charge Defendants with unjust enrichment. *Harris Ins. Agency, Inc. v. Tarene Farms, LLC*, 293 Ga. App. 430, 431 (2008) (unjust enrichment applies "when the *party sought to be charged* has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for") (emphasis added).

The second alleged benefit is likewise insufficient as a matter of law. First, it is unclear how IA Daron Village received a benefit at all when it paid $300,000 *more* for the Daron Village complex than Addison Capital had paid three months prior. Indeed, BHH concedes Defendants paid adequate consideration for the purchase of the Daron Village complex.[31]

---

[30] *See generally id*.

[31] ECF 6, at 14.

Second, BHH does not allege IA Daron Village used any of BHH's money to acquire the complex from Addison Capital. In fact, BHH does not allege Defendants have ever received any money belonging to BHH. The failure to allege that BHH directly conferred a benefit on Defendants is fatal to the unjust enrichment claim. *E.g., Tiller*, 549 F. App'x at 857 (affirming dismissal of unjust enrichment claim because "the plaintiffs have not conferred any sort of benefit on [Defendant] or performed any services for [Defendant] for which they have not been paid"); *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1334–35 (N.D. Ga. 2017) (dismissing claim because "Plaintiff presented nothing other than conclusory allegations to show that she conferred a benefit on Defendant, whether directly or indirectly"); *Knieper*, 2016 WL 9449794, at *9 ("Plaintiff has failed to allege the first element of the unjust enrichment claim. Case law requires that a plaintiff confer a benefit upon the defendant."); *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1341 (N.D. Ga. 2008) ("Plaintiff cannot claim unjust enrichment unless it can show that it conferred a benefit upon the defendant."); *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007) ("There is no evidence to establish that any of named plaintiffs conferred a benefit directly to Future Graphics. The plaintiff has failed to cite to any authority for pursuing an unjust

enrichment claim against a third party who indirectly received a benefit."). Therefore, BHH's unjust enrichment claim in Count II must be dismissed.

### ii. Money Had and Received

"Under the common law doctrine of money had and received, recovery is authorized against one who holds unspecified sums of money of another which he ought in equity and good conscience to refund." *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2001). To state a claim, a plaintiff must show: "[A] person has received money of the other that in equity and good conscious he should not be permitted to keep; demand for repayment has been made; and the demand was refused." *Id.*

As stated above, BHH does not allege Defendants have received, misappropriated, or otherwise used any money belonging to BHH. BHH's allegations that Kieffer and the Addison Entities embezzled BHH's funds to purchase the Daron Village complex in the first instance are insufficient to charge the Defendant IA Entities with misappropriation. *Brinson v. Providence Cmty. Corr.*, 785 F. App'x 738, 740 (11th Cir. 2019) (applying Georgia law and holding "[t]o state a claim for money had and received, a party must show . . . that an entity has received money justly belonging to another"); *Am. Gen. Life & Acc. Ins. Co. v. Ward*, 509 F. Supp. 2d 1324, 1330 (N.D. Ga. 2007) (granting motion to dismiss because

"[d]efendants do not allege that they made any payments to plaintiff, or that plaintiff otherwise received any money from defendants"); *Eastside Carpet Mills, Inc. v. Dodd*, 144 Ga. App. 580, 580 (1978) ("Logically, then, when one sues for money had and received for his use, he must prove that the money was his own.").

As such, BHH's claim for money had and received in Count II must be dismissed.

### B. BHH's Claims for Equitable Accounting (Count I) and Constructive Trust (Count III) Must Be Dismissed.

#### i. Equitable Accounting

Pursuant to O.C.G.A. § 23-2-70, a claim for equitable accounting is proper when it involves:

> (1) Mutual accounts growing out of privity of contract; (2) Cases where accounts are complicated and intricate; (3) Cases where a discovery or writ of *ne exeat* is prayed and granted; (4) Cases where the account is of a trust fund; (5) Accounts between partners or tenants in common; and (6) Cases where a multiplicity of actions would render a trial difficult, expensive, and unsatisfactory at law.

Georgia law is unclear as to whether a demand for equitable accounting may survive as an independent cause of action. This Court has previously found that "a demand for accounting appears to be treated as an equitable form of relief, not a separate cause of action." *Wells Fargo Bank v. Crowley*, No. 1:13-cv-01427-CAP-

LTW, 2014 WL 11370437, at *6 (N.D. Ga. Feb. 20, 2014). *See also Anderson v. First Tennessee Bank, Nat'l Ass'n*, No. 1:18-cv-02702-ELR-RGV, 2018 WL 6818661, at *8 (N.D. Ga. Dec. 7, 2018) (same).

Regardless of whether equitable accounting constitutes an independent cause of action, Georgia law *is* clear that "[n]ot every litigant has a right to an equitable accounting, which is granted only in carefully prescribed and determined circumstances, such as when an accounting at law is inadequate." *Heath v. Sims*, 242 Ga. App. 691, 692 (2000) (*citing Herring*, 238 Ga. at 262). One prerequisite for an equitable accounting is that "the facts alleged show[ ] that on an accounting the petitioner will likely be entitled to recover judgment for some amount." *Riverview Condo. Ass'n v. Ocwen Fed. Bank, FSB*, 285 Ga. App. 7, 8 (2007).

BHH seeks an equitable accounting on the sole allegation that "[t]he embezzled funds constituted complicated and intricate accounts between Plaintiff and the IA Entities requiring an accounting, for which Plaintiff lacks an adequate remedy at law."[32] BHH's equitable accounting claim fails at the starting gate because, as discussed above, BHH does not otherwise plead an underlying claim

---

32  ECF 1-1, at 12.

entitling it to recover a judgment for some amount against Defendants. As such, Count I must be dismissed.

Even assuming a claim for equitable accounting could stand, it would nonetheless be subject to dismissal because BHH does not allege it has any accounts or transactions with Defendants—let alone ones that are complex and intricate. At best, BHH's allegations reflect direct dealings with Kieffer and the Addison Entities, most of which predate the Defendant IA Entities' creation. While there may have been complex and intricate financial accounts between BHH and Kieffer/the Addison Entities, those accounts do not involve Defendants, especially when BHH has never directly dealt with or transacted business with Defendants.

Finally, a claim for equitable accounting is improper because BHH appears to have an adequate remedy at law. BHH may avail itself of the discovery process afforded in its currently-pending lawsuit against Kieffer and the Addison Entities in the State Court of Fulton County.[33] BHH has not represented that it is precluded or otherwise limited from obtaining the sought-after information about Defendants, if deemed relevant, through the discovery tools at its disposal in that forum. This adequate remedy at law provides a further basis for dismissal of

---

[33] *See BH Hasid v. Aryeh Kieffer, Addison Capital, LLC, & Addison Advisors, LLC*, Case No. 2017-cv-298598 (2017) (Ga. St. Ct., Fulton Co.).

BHH's equitable accounting claim here. *Heath*, 242 Ga. App. at 692 (affirming dismissal of equitable accounting claim because plaintiff possessed adequate remedy at law to investigate claims in pending suit in probate court); *Faircloth v. A.L. Williams & Assocs., Inc.*, 219 Ga. App. 560, 560 (1995) (affirming summary judgment on equitable accounting claim because "the availability of extensive discovery . . . provides plaintiff with an adequate remedy at law").

BHH's claim for equitable accounting (Count I) must be dismissed.

### ii. Constructive Trust

Pursuant to O.C.G.A. § 53-12-132:

> A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.

This statute embodies the overriding principle that "[e]quity will not allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *Whiten v. Murray*, 267 Ga. App. 417, 420 (2004). Nonetheless, a "claim for the imposition of a constructive trust is not an independent cause of action." *Morrison v. Morrison*, 284 Ga. 112, 113 (2008). *See also GMRI, Inc. v. Indep. Bank of Ga.*, 212 F. Supp. 3d 1306, 1314 (N.D. Ga. 2016) ("Constructive trust is a remedy, not a cause of action."); *City of Atl. v. Hotels.com,*

*L.P.*, 332 Ga. App. 888, 892 (2015) ("A constructive trust is an equitable remedy imposed by a court to prevent unjust enrichment.") (*citing Ansley v. Raczka-Long*, 293 Ga. 138, 141 (2013)).

Like its claim for an equitable accounting, BHH cannot, as a matter of law, pursue a claim for constructive trust because BHH's tort claims must be dismissed.[34] Without an underlying cause of action, Georgia law does not permit the imposition of a constructive trust. *Copeland v. Miller*, 347 Ga. App. 123, 127 (2018) ("Because Copeland's prayer for the remedy of imposing a constructive trust on the decedent's property is predicated on his claims for fraud and interference with the expectation of a gift, and because those claims do not survive Miller's motion to dismiss, the equitable remedy is therefore not available to Copeland."); *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1998) (affirming dismissal of constructive trust claim because plaintiff failed to adequately prove underlying unjust enrichment).

BHH is correct that a "constructive trust can also be imposed against a third party even if they were not the ones who committed the wrongful acts."[35] *Lee v. Lee*, No. 1:16-cv-419-TWT, 2016 WL 5373859, at *6 (N.D. Ga. Sept. 26, 2016). This

---

34 *Supra* at 7–12.

35 ECF 6, at 17–18.

does not, however, change the result here. BHH's cited cases are unpersuasive, as each court determined that a claim for constructive trust was properly pled because it was accompanied by a valid, underlying claim for relief. [ECF 6, at 17–18 (*citing Lee*, 2016 WL 5373859, at * 6 (distinguishing *Meeks* and finding demand for constructive trust properly pled because "there is sufficient evidence to support a plausible claim that the Defendant Lee misappropriated the Property from the Trust"); *Reinhardt Univ. v. Castleberry*, 318 Ga. App. 416, 420 (2012) (constructive trust properly pled when based on underlying claim for breach of fiduciary duties and misappropriation of funds); *Kelly v. Johnston*, 258 Ga. 660, 661 (1988) (constructive trust properly pled when based on underlying claim for fraud against named defendant))]. Here, BHH's claim is not supported by an underlying claim for relief. Thus, its constructive trust claim (Count III) must be dismissed.

### C. Attorney's Fees

It is axiomatic that "[a] prerequisite to any award of attorney fees under [O.C.G.A.] § 13–6–11 is the award of damages or other relief on the underlying claim." *Prof'l Energy Mgmt., Inc. v. Necaise,* 300 Ga. App. 223, 228–29 (2009). *See also Lamb v. Salvage Disposal Co. of Ga.*, 244 Ga. App. 193, 196 (2000) ("[O.C.G.A.] § 13–6–11 does not create an independent cause of action but merely permits in certain limited circumstances the recovery of the expenses of litigation incurred as an

additional element of damages."); *Gardner v. Kinney*, 230 Ga. App. 771, 772 (1998) ("Because litigation expenses (costs and attorney fees) are wholly ancillary, they are not recoverable when no damages are awarded."). In light of this Order dismissing BHH's substantive claims for relief, its claim for attorney's fees (Count IV) must likewise be dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss [ECF 3] is **GRANTED.** BHH's claims are **DISMISSED WITHOUT PREJUDICE**. BHH shall be permitted 14 days after entry of this Order in which to file an amended complaint that seeks to cure the deficiencies outlined herein. If BHH does not file an amended complaint within 14 days, the Clerk is **DIRECTED** to dismiss this action and close the case.

**SO ORDERED** this the 28th day of January 2020.

Steven D. Grimberg
United States District Court Judge